(204 P.3d 648)

No. 100,157

BOARD OF COUNTY COMMISSIONERS OF SEDGWICK COUNTY, KANSAS, *Appellee*, v. CITY OF PARK CITY, KANSAS, *Appellant*.

Opinion filed April 3, 2009.

*Timothy J. Finnerty* and *Ryan D. Weltz*, of Wallace, Saunders, Austin, Brown & Enochs, Chartered, of Wichita, for appellant.

*Robert W. Parnacott*, assistant county counselor, for appellee.

Before BUSER, P.J., ELLIOTT and GREEN, JJ.

GREEN, J.: After summary judgment was granted in favor of the Board of County Commissioners of Sedgwick County (Board), Park City received an extension to file a posttrial motion under K.S.A. 60-259(f). In addition, Park City moved for relief under K.S.A. 60-260(b), arguing that the trial court had improperly granted summary judgment in favor of the Board. The Board responded, arguing that the trial court had lacked the authority to extend the period to file the K.S.A. 60-259(f) motion. The trial court agreed and denied the motion. Moreover, the trial court denied the K.S.A. 60-260(b) motion. We dismiss in part for lack of appellate jurisdiction and affirm in part.

Greatly summarized, on December 21, 2006, the Board brought a lawsuit in Sedgwick County District Court challenging Park City's annexation of property. On June 8, 2007, the Board moved for summary judgment. The sole issue the Board raised in its motion was whether K.S.A. 2006 Supp. 12-520a(d)(6) and K.S.A. 12-530 required Park City to give notice to the Park City Planning Commission (PCPC) that Park City intended to annex the property. The fact that Park City failed to provide the PCPC notice was not in dispute. In its summary judgment motion, the Board argued that because Park City had failed to give notice to the PCPC, Park City's annexation of the property was invalid under K.S.A. 12-530(b) and K.S.A. 2006 Supp. 12-538.

Park City responded to the summary judgment motion, arguing that the only planning commission that was entitled to notice under the applicable statutes was the Wichita-Sedgwick County Metropolitan Area Planning Commission (MAPC). The trial court ruled from the bench that K.S.A. 2006 Supp. 12-520a(d)(6) and K.S.A. 12-530 required Park City to notify, not only the MAPC, but also the PCPC that it intended to annex the land. Therefore, the trial court ruled that the annexation was nullified.

After the hearing on the summary judgment motion, the City retained new counsel. Park City's new attorney entered his appearance on August 3, 2007.

On August 15, 2007, the trial court filed its journal entry granting the Board's motion for summary judgment. On August 20, 2007,

Park City (with the Board's approval) made an oral motion to the trial court asking it to grant an extension of time to file a posttrial motion. The court granted the motion and extended the deadline to August 31, 2007. On August 30, 2007, Park City again (with the Board's approval) made an oral motion to the trial court asking for another extension. The court granted the motion and moved the deadline to September 4, 2007. Finally, on September 4, 2007, Park City (again with the Board's approval) made another oral motion for an extension. The trial court granted the motion and extended the deadline to September 5, 2007.

On September 5, 2007, Park City moved for relief under K.S.A. 60-259(f) and K.S.A. 60-260(b). In its motion, Park City argued that the trial court erred in its interpretation of the applicable statutes and, therefore, Park City was not required to give the PCPC notice that Park City intended to annex the property at issue. In regards to the 60-260(b) motion, Park City argued that the summary judgment order should be set aside because its previous counsel did not adequately oppose the summary judgment motion. Park City then submitted additional legal arguments and facts which it believed supported the conclusion that it was not required to give notice to the PCPC.

The Board responded on September 24, 2007, arguing that Park City's K.S.A. 60-259(f) motion was untimely filed because such a motion had to be filed within 10 days after the entry of judgment and K.S.A. 60-206(b) prohibited a trial court from extending this time period. In regards to Park City's motion being treated entirely like a K.S.A. 60-260(b) motion, the Board argued that Park City's previous attorney sufficiently argued against the summary judgment motion and that the additional facts Park City wished to now introduce had no relevance to the issue of whether the applicable statutes required Park City to notify the PCPC. Therefore, the Board argued that Park City did not make a showing of "mistake, inadvertence, surprise, or excusable neglect" that would relieve it from the summary judgment order.

The trial court denied the motions from the bench. A journal entry memorializing the trial court's ruling was filed on February 1, 2008. In its journal entry, the trial court found that based on

K.S.A. 60-206(b), Park City's 60-259(f) motion was filed out of time and, as a result, had to be denied. In regards to Park City's 60-260(b) motion, the trial court stated that none of the additional legal arguments or facts changed its conclusion that K.S.A. 2006 Supp. 12-520a(d)(6) and K.S.A. 12-530 required Park City to give notice to the PCPC. As a result, the trial court determined that Park City was not entitled to relief under K.S.A. 60-260(b).

On February 12, 2008, a hearing was conducted to determine whether the unique circumstances doctrine should be applied to allow Park City to file a late 60-259(f) motion. The trial court denied the motion from the bench.

Park City filed its notice of appeal on February 15, 2008.

I. *Does this court have jurisdiction to review the trial court's order granting the Board's summary judgment motion?*

A. *Jurisdiction*

Our Supreme Court in *Flores Rentals v. Flores*, 283 Kan. 476, 480-481, 153 P.3d 523 (2007), stated:

"Appellate jurisdiction is defined by statute; the right to appeal is neither a vested nor constitutional right. The only reference in the Kansas Constitution to appellate jurisdiction iterates this principle, stating the Kansas Supreme Court shall have 'such appellate jurisdiction as may be provided by law.' Kansas Constitution, Article 3, § 3. The Constitution is silent regarding the Court of Appeals, which is not a constitutional court but rather was statutorily created. In creating the Court of Appeals, the legislature limited its jurisdiction, defining the circumstances under which there is jurisdiction to hear an appeal. As a result, Kansas appellate courts may exercise jurisdiction only under circumstances allowed by statute; the appellate courts do not have discretionary power to entertain appeals from all district court orders. [Citations omitted.]"

Furthermore, the court stated in *Bruch v. Kansas Dept. of Revenue*, 282 Kan. 764, 773-74, 148 P.3d 538 (2006), that "[p]arties cannot confer subject matter jurisdiction by consent, waiver, or estoppel, nor can parties convey jurisdiction on a court by failing to object to its lack of jurisdiction. . . . Whether subject matter jurisdiction exists is a question of law over which [an appellate court's] scope of review is unlimited."

Because the right to appeal is entirely statutory, appeals must be taken in the manner prescribed by statute to invoke an appellate

court's jurisdiction. *Butler County R.W.D. No. 8 v. Yates*, 275 Kan. 291, 299, 64 P.3d 357 (2003). A timely notice of appeal must be filed within 30 days from the "entry of the judgment." K.S.A. 60-2103(a). Nevertheless, this time period can be tolled by filing (among other motions) a timely motion to alter or amend the judgment under K.S.A. 60-259(f). K.S.A. 60-2103(a). In order to be considered timely, a 60-259(f) motion must be in writing and be served and filed not later than 10 days after the entry of judgment. K.S.A. 60-207(b); K.S.A. 60-259(f); see *Thomas v. Davis-Moore Datsun, Inc.*, 11 Kan. App. 2d 622, 624, 731 P.2d 1283 (1987). K.S.A. 2008 Supp. 60-206(b) clearly states that a trial court cannot extend the 10-day time period for filing a 60-259(f) motion. Once the trial court enters its order ruling on a posttrial motion, the 30-day time period for filing a notice of appeal starts running again in its entirety. K.S.A. 60-2103(a).

The trial court in this case filed its journal entry granting summary judgment on August 15, 2007. Therefore, Park City had until August 29, 2007, to serve and file a written 60-259(f) motion that would toll the 30-day time period for filing a notice of appeal. See K.S.A. 2008 Supp. 60-206(a); K.S.A. 60-207(b); K.S.A. 60-259(f); K.S.A. 60-2103(a). If Park City chose not to file a timely 60-259(f) motion, then it had until September 14, 2007, to file its notice of appeal. K.S.A. 60-2103(a). Neither of those things happened in this case.

As mentioned earlier, Park City asked (with the Board's approval) for three extensions to file a 60-259(f) motion. The trial court, initially unaware that K.S.A. 2008 Supp. 60-206(b) prohibited extending the time period for filing a 60-259(f) motion, granted Park City's request. Park City finally filed its 60-259(f) motion on September 5, 2007, 5 days after the deadline for filing such a motion had passed. Based on statutory rules mentioned earlier, the time period for filing a notice of appeal was never tolled; September 14, 2007, remained the deadline for filing a timely notice of appeal. As a result, we lack jurisdiction over Park City's appeal of the underlying case because it was filed more than 30 days after the trial court's entry of judgment, which is a jurisdictional requirement that cannot be waived or forfeited.

## B. Unique Circumstances

Despite this conclusion, Park City argues in its brief that this court should apply the "unique circumstances doctrine" and find that it does have jurisdiction to determine the merits of the summary judgment order. Simply stated, this doctrine, which the United States Supreme Court recently disapproved in *Bowles v. Russell*, 551 U.S. 205, 168 L. Ed. 2d 96, 127 S. Ct. 2360 (2007), allows an appellate court to exercise jurisdiction over a late appeal if the appellant can show that he or she reasonably relied on some judicial action—taking place before the deadline for filing a notice of appeal—which purportedly extended the time period for bringing an appeal. See *Schroeder v. Urban*, 242 Kan. 710, 712-14, 750 P.2d 405 (1988); *Underhill v. Thompson*, 37 Kan. App. 2d 870, 880-81, 158 P.3d 987, *rev. denied* 285 Kan. 1177 (2007).

The doctrine was first developed in *Harris Truck Lines, Inc. v. Cherry Meat Packers, Inc.*, 371 U.S. 215, 217, 9 L. Ed. 2d 261, 83 S. Ct. 283 (1962). In that case, after the trial court dismissed the petitioner's complaint and entered judgment for the respondent on its counterclaim, petitioner asked for and received an extension of time to file a notice of appeal. Rule 73(a) of the Federal Rules of Civil Procedure allowed a trial court to extend the time period for filing a notice of appeal an additional 30 days only *if* the movant could show excusable neglect based on his or her failure to learn of the entry of the judgment. In *Harris*, the petitioner clearly knew about the entry of judgment but asked for the extension based on other reasons. The trial court, believing it had the authority to grant the petitioner an extension under Rule 73(a), did so, and the petitioner filed its notice appeal within the extended time period.

On appeal, a panel of the Seventh Circuit dismissed the case due to a lack of jurisdiction, stating that the petitioner did not make a showing of excusable neglect based on its failure to learn of the entry of judgment. Therefore, according to the panel, the trial court did not have the authority to grant the extension of time under Rule 73(a). The Supreme Court reversed this holding, ignoring Rule 73(a)'s explicit language and stating:

"In view of the obvious great hardship to a party who relies upon the trial judge's finding of 'excusable neglect' prior to the expiration of the 30-day period and then

suffers reversal of the finding, it should be given great deference by the reviewing court. Whatever the proper result as an initial matter on the facts here, the record contains a showing of *unique circumstances* sufficient that the Court of Appeals ought not to have disturbed the motion judge's ruling." (Emphasis added.) 371 U.S. at 217.

The Supreme Court concluded that because the petitioner relied on the trial court's erroneous finding that Rule 73(a) allowed for the extension, the petitioner's appeal should not be dismissed. 371 U.S. at 217.

The unique circumstances doctrine was again applied by the Supreme Court in *Thompson v. I.N.S.*, 375 U.S. 384, 11 L. Ed. 2d 404, 84 S. Ct. 397 (1964), a case with facts very similar to the ones here. In *Thompson,* the United States District Court for the Northern District of Illinois entered a final order denying Thompson's petition for naturalization. The then applicable Rule 73(a) stated that Thompson had 60 days to file his notice of appeal and that the time period could be tolled by (among others) a *timely* motion under the Federal Rules of Civil Procedure, Rule 52(b) (amend or make additional findings of fact), Rule 59(b) (new trial), or Rule 59(e) (alter or amend judgment). In order for these motions to be considered timely, they had to be served within 10 days after the entry of judgment. Rule 6(b) specifically stated that a trial court could not extend the 10-day time period for filing motions under Rules 52(b), 59(b), and 59(e). See 375 U.S. at 387-89.

Twelve days after the entry of judgment (2 days late), Thompson served notice on the government that he would appear before the trial judge with posttrial motions under Rules 52(b), 59(b), and 59(e). The government made no objection concerning the motions' timeliness, and the trial court specifically declared that the motion for a new trial was made in ample time. A few days later, the trial court denied Thompson's posttrial motions. Within 60 days of the denial of the posttrial motions but not within 60 days of the original entry of judgment by the trial court, Thompson filed his notice of appeal.

On appeal to the Seventh Circuit Court of Appeals, the government moved to dismiss the appeal on the ground that the notice of appeal had not been filed within the 60-day period prescribed

by Rule 73(a) because Thompson's posttrial motions were not timely and, therefore, did not toll the period for filing a notice of appeal. The Seventh Circuit granted the government's motion to dismiss.

The Supreme Court applied its holding in *Harris* and reversed the Seventh Circuit, writing:

"The instant cause fits squarely within the letter and spirit of *Harris*. Here, as there, petitioner did an act which, if properly done, postponed the deadline for the filing of his appeal. Here, as there, the District Court concluded that the act had been properly done. Here, as there, the petitioner relied on the statement of the District Court and filed the appeal within the assumedly new deadline but beyond the old deadline. And here, as there, the Court of Appeals concluded that the District Court had erred and dismissed the appeal. Accordingly, in view of these 'unique circumstances,' [citation omitted], we grant the writ of certiorari, vacate the judgment, and remand the case to the Court of Appeals so that petitioner's appeal may be heard on the merits." 375 U.S. at 387.

In his dissent, Justice Clark noted that Rule 6(b) explicitly prevented the trial court from extending the time period for filing posttrial motions. 375 U.S. at 388. Therefore, regardless of the actions taken by the trial court and the government, Thompson's late posttrial motions simply did not toll the 60-day time period for filing a notice of appeal. Justice Clark wrote:

"We have said that untimely motions to amend the findings and for new trial are of no legal significance whatsoever because the limiting language of Rule 6(b) is 'mandatory and jurisdictional and [can] not be extended regardless of excuse.' [Citation omitted.] In my view we should abide by [the Federal Rules of Civil Procedure] or amend them, rather than emasculate them.

"Rules of procedure are a necessary part of an orderly system of justice. Their efficacy, however, depends upon the willingness of the courts to enforce them according to their terms. Changes in rules whose inflexibility has turned out to work hardship should be effected by the process of amendment, not by *ad hoc* relaxations by this Court in particular cases. Such dispensations in the long run actually produce mischievous results, undermining the certainty of the rules and causing confusion among the lower courts and the bar. [Citation omitted.]" 375 U.S. at 389-90. (Clark, J., dissenting.)

Accordingly, the dissent would have found that Thompson's appeal was out-of-time, thus affirming the Seventh Circuit's conclusion that it did not have jurisdiction over his appeal.

In finding that the Seventh Circuit erred in concluding that it did not have jurisdiction over the appeals, the *Harris* and *Thompson* Courts clearly focused on the predicament appellants found themselves in when they relied on a district court's action which purportedly tolled or extended the time period for filing a notice of appeal and, then, based on this reliance, the appellants refrained from filing a notice of appeal until the correct deadline had passed. Nevertheless, as Justice Clark alluded to in his dissent in *Thompson*, if the rules of civil and appellate procedure explicitly forbid a trial court from granting an extension of time, how can that extension have any sort of legal significance—such as, toll the time period for filing a notice of appeal? See 375 U.S. at 389-390 (Clark, J., dissenting). *Cf. Waterview Resolution Corp. v. Allen*, 274 Kan. 1016, 1024, 58 P.3d 1284 (2002) ("A judgment is void if the court that rendered it lacked subject matter jurisdiction, personal jurisdiction, or acted in a manner inconsistent with due process."). Furthermore, if the rules of civil and appellate procedure explicitly forbid the extension of time that the appellant requested from the trial court, how can the appellant reasonably rely on that extension if it is granted? *Cf. State ex rel. Murray v. Palmgren*, 231 Kan. 524, 536, 646 P.2d 1091 (1982) (" 'Ignorance of the law is no excuse.' "); *Flott v. Wenger Mixer Manufacturing Co.*, 189 Kan. 80, 88, 367 P.2d 44 (1961) (Parties in litigation are presumed to know the law.); *Knight v. Myers*, 12 Kan. App. 2d 469, 475, 748 P.2d 896 (1988) ("Everyone is presumed to know the law . . . including relevant statutes of limitation."); see also *Miller v. Murdock*, 788 P.2d 614, 616 n.2 (Wyo. 1990) ("It is difficult to understand how a party may reasonably rely on a court's error in applying rules [of civil procedure] counsel is charged with knowing. . . . [I]gnorance of the rules is neither reasonable nor excusable.").

Our Supreme Court adopted the unique circumstances doctrine in *Schroeder*, 242 Kan. 710, a case substantially similar to *Harris*. In *Schroeder*, the trial court, before the deadline for filing a notice of appeal, granted the appellants a 30-day extension to file their notice. Because the appellants knew of the entry of judgment, the trial court did not have the authority under K.S.A. 60-2103(a) to grant the extension. The appellants, relying on validity of the ex-

tension, refrained from filing their notice of appeal until after the original deadline had passed. On appeal, this court dismissed the case for lack of jurisdiction. Our Supreme Court, however, held that the reasoning found in *Harris* and in *Stauber v. Kieser*, 810 F.2d 1 (10th Cir. 1982) (applying the unique circumstances doctrine to save an appeal where the trial court improperly granted an extension of time to file a posttrial motion), should be applied to save the appellants' appeal and, therefore, remanded the case to this court for a determination on the merits. 242 Kan. at 712-14.

During the same term that *Schroeder* was decided, our Supreme Court applied the unique circumstances doctrine to *Johnson v. American Cyanamid Co.*, 243 Kan. 291, 758 P.2d 206 (1988), a case factually similar to *Thompson, Stauber*, and the present case. The trial court in *Johnson* granted Cyanamid a 10-day extension to file their posttrial motions which, like now, was not allowed under then applicable K.S.A. 60-206(b) (Ensley 1983). As a result, when Cyanamid filed its late posttrial motions, the 30-day time period under K.S.A. 60-2103(a) (Ensley 1983) was not tolled, making Cyanamid's notice of appeal out-of-time. After quoting extensively from *Schroeder* (which included the citation to and quote from *Stauber*), our Supreme Court again found that the unique circumstances doctrine was applicable to save Cyanamid's appeal. Our Supreme Court stated:

"In the case before us, the extension did not come into being to extend, directly, the time for filing an appeal, but rather the ten-day period for filing post-trial motions. Had the court denied the motion, Cyanamid would still have had several days to appeal from the judgment by anyone's calculation of precisely when the 30-day period commenced to run. Counsel for plaintiff not only did not object to the extension, he approved of it. The district court was presented with an order extending the time which was approved by the plaintiff, who now argues it was an invalid order of no force and effect. Yet, clearly, Cyanamid reasonably and in good faith relied upon the order extending the time for the filing of the post-trial motions. Within the time frame of the extension, Cyanamid filed its post-trial motions (June 21, 1984). The original 30-day appeal time from the entry of judgment had not yet expired when these motions were filed, but Cyanamid, in reliance on the extension, did not appeal until after its post-trial motions had been denied. The unique circumstances doctrine is particularly applicable to the facts herein." *Johnson*, 243 Kan. at 301.

Over time, the legal foundation upon which *Schroeder* and *Johnson* was built has slowly eroded away, making the precedential value of those two cases questionable at best. First, *Stauber*, the Tenth Circuit Court of Appeals case that both the *Schroeder* and the *Johnson* courts had cited as support for applying the unique circumstances doctrine, was explicitly overruled by *Weitz v. Lovelace Health Systems, Inc.*, 214 F.3d 1175, 1179-80 (10th Cir. 2000). Like the question presented here, the *Weitz* court had to determine whether the unique circumstances doctrine could be applied when the appellant asked for and received an extension to file a late Rule 59(e) motion (an extension which was and still is prohibited under Rule 6[b]), which had the effect of making his notice of appeal also late. Though the *Weitz* court did not question the validity of the unique circumstances doctrine, the court did drastically limit its future applicability by stating that the doctrine would apply only if it was reasonable for the appellant to rely on the action taken by the trial court. 214 F.3d at 1178-80. The court then went on to hold that it was never reasonable for a party to rely on an act which is explicitly forbidden by the Federal Rules of Civil Procedure. 214 F.3d at 1180 ("In the present case, the rules expressly forbid any extensions for Rule 59[e] motions, and even a passing reference to the rules will reveal this fact. Consequently, the mere fact that a court has granted such an extension does not justify reliance that is clearly at odds with the text of the rules."). As a result, the court found that the unique circumstances doctrine would not be applied to Weitz' appeal. 214 F.3d at 1181.

*Harris*, the other case that the *Schroeder* and *Johnson* courts cited as support for applying the unique circumstances doctrine, was (along with *Thompson*) overruled recently by the United States Supreme Court in *Bowles*, 551 U.S. at 214. In *Bowles*, a trial court judge incorrectly told Bowles that he had 17 days to file his notice appeal when, in reality, the applicable statute only allowed for 14 days. On the 16th day, Bowles filed his notice of appeal. The Sixth Circuit Court of Appeals dismissed Bowles' appeal, and the Supreme Court affirmed this decision. The Supreme Court reasoned that because the legislature, within constitutional bounds, limited the jurisdiction of appellate courts to hear only cases brought

within the prescribed statutory period, appellate courts were not free "to create equitable exceptions to jurisdictional requirements" in order to exercise jurisdiction over untimely appeals. 551 U.S. at 214. As a result, the Court concluded that the unique circumstances doctrine was no longer valid. 551 U.S. at 214.

Numerous pronouncements from our Supreme Court concerning jurisdiction are consistent with the view taken by the *Bowles* Court. See, *e.g., Flores*, 283 Kan. at 480-81 ("Kansas appellate courts may exercise jurisdiction only under circumstances allowed by statute; the appellate courts do not have discretionary power to entertain appeals from all district court orders."); *Bruch*, 282 Kan. at 764 ("Parties cannot confer subject matter jurisdiction by consent, waiver, or estoppel, nor can parties convey jurisdiction on a court by failing to object to its lack of jurisdiction."); *State v. McCoin*, 278 Kan. 465, 468, 101 P.3d 1204 (2004) (If the trial court lacks jurisdiction to enter an order, an appellate court does not acquire jurisdiction over the subject matter on appeal.); *Labette Community College v. Board of Crawford County Comm'rs*, 258 Kan. 622, 626, 907 P.2d 127 (1995) (An agreement between the parties that the right to appeal is not waived cannot invest an appellate court with jurisdiction when it is otherwise lacking.).

Recently, our Supreme Court had a chance to consider *Bowles* and the effect it had on the continued viability of the unique circumstances doctrine in Kansas. See *Finley v. Estate of DeGrazio*, 285 Kan. 202, 170 P.3d 407 (2007). In *Finley*, the trial court initially granted the plaintiff's motion for an extension of time under K.S.A. 60-203(a)(1), which gives the trial court authority to extend the time to perfect service of process for an additional 30 days "upon showing of good cause." Nevertheless, upon reconsideration, the trial court found that the plaintiff had failed to establish good cause, found the unique circumstance doctrine inapplicable, and dismissed the petition as time barred under the statute of limitations in K.S.A. 60-513(a)(7). This court reversed, applying the unique circumstances doctrine in *Finley v. Estate of DeGrazio*, 36 Kan. App. 2d 844, 148 P.3d 1284 (2006).

In reversing this court's decision, our Supreme Court specifically recognized *Bowles'* conclusion that an appellate court lacks au-

thority to create equitable exceptions to jurisdictional requirements and, therefore, the " 'use of the "unique circumstances doctrine" is illegitimate.' " 285 Kan. at 210 (citing *Bowles*, 551 U.S. at 214. Despite its explicit recognition of *Bowles'* holding, the *Finley* court, surprisingly, proceeded to consider the application of the unique circumstances doctrine, ultimately concluding that the doctrine did not apply because it "depends upon such concepts as equity, the interest of justice, good faith, estoppel, or *nonparty error*"—concepts the court concluded could not be applied to the facts before it. (Emphasis added.) 285 Kan. at 209, 213.

As noted by this court in *Rowland v. Barb*, 40 Kan. App. 2d 493, 501, 193 P.3d 499 (2008):

"It appears the *Finley* court interpreted *Bowles* to permit application of the unique circumstances doctrine *only* if equitable exceptions justify its application—when in fact, *Bowles* ruled that courts have no authority to apply the doctrine 'to create equitable exceptions to jurisdictional requirements.' [Citation omitted.] Further, while our Supreme Court recognized that the unique circumstances doctrine had its roots in *Harris Truck Lines, Inc.*, it failed to recognize that the United States Supreme Court explicitly overruled *Harris Truck Lines* to the extent it authorized an exception to a jurisdictional rule. [Citation omitted.] This overruling is significant in that, as discussed, our Supreme Court relied upon *Harris Truck Lines* in adopting the unique circumstances doctrine in *Schroeder*, 242 Kan. at 712-13."

Even if the *Finley* decision can be interpreted to preserve the viability of the unique circumstances doctrine in Kansas, the case arguably narrowed the scope of the doctrine, making it inapplicable to this case. Our Supreme Court noted that the doctrine had only been applied in Kansas to cases involving "nonparty error," citing, among other cases as support, *Nguyen v. IBP, Inc.*, 266 Kan. 580, 587, 972 P.2d 747 (1999), and *Slayden v. Sixta*, 250 Kan. 23, 30, 825 P.2d 119 (1992). *Finley*, 285 Kan. at 210-11. *Nguyen* was a workers compensation case where the administrative law judge mailed the notice of award to the wrong address, thereby causing Nguyen to receive the award after the deadline for filing an application for review had passed. Our Supreme Court, believing Nguyen should not be punished for a mistake that the ALJ had solely made, applied the unique circumstances doctrine and held that the time period for filing the application for review was tolled.

As a result, Nguyen's appeal was remanded to the Workers Compensation Board for a decision on the merits. 266 Kan. at 587, 590. In *Slayden*, our Supreme Court applied the unique circumstances doctrine in order to save a case from being barred by the statute of limitations because a clerk of the trial court issued a summons to the wrong address, contributing to the defendant being served out of time. 250 Kan. at 27-31.

Our Supreme Court's statement in *Finley*, that the unique circumstances doctrine has been applied to situations involving only nonparty error (as depicted in *Nguyen* and *Slayden*), is not entirely correct. As pointed out earlier, our Supreme Court applied the doctrine in *Schroeder* and *Johnson*, cases clearly involving party error. *Schroeder*, 242 Kan. at 712-14 (appellants moved for an extension to file a notice of appeal which, based on a simple reading of K.S.A. 60-2103[a], was not allowed); *Johnson*, 243 Kan. at 293-94, 301 (appellants moved for an extension to file posttrial motions which, based on a simple reading of then applicable K.S.A. 60-206[b], was not allowed). Nevertheless, regardless of the previous statement's accuracy in *Finley*, the *Finley* court obviously intended · for the unique circumstances doctrine (assuming the doctrine would still be viable) to be applied in future situations involving only nonparty error (*i.e.*, situations where the trial court is not lulled into erring by a party). Hence, we doubt whether *Schroeder* and *Johnson* are still good law.

Although this may seem a harsh result for Park City, because it relied on the extensions consented to by the Board and granted by the trial court, Park City is not without blame in this situation. For example, a careful reading of K.S.A. 2008 Supp. 60-206(b) would have given Park City notice that the trial court lacked authority to grant an extension of time to file a K.S.A. 60-259(f) motion. See *Panhorst v. United States*, 241 F.3d 367, 373 (4th Cir. 2001) ("Because a litigant 'has a duty to familiarize himself with the [Federal Rules of Civil Procedure],' which clearly prohibit an extension of time in which to file a Rule 59 motion, we cannot say that appellants' reliance on the trial court's acceptance of the submitted order was reasonable."); *Pinion v. Dow Chemical, U.S.A.*, 928 F.2d 1522, 1534 (11th Cir. 1991) (holding that an appellant's reliance upon

the trial court's unauthorized extension of time to file a posttrial motion was not reasonable because "[s]imply scanning [Rule 6(b)] would have provided notice that there was an inconsistency between the Rule's text and the court's [extension] order"). For the reasons discussed earlier, we lack authority to invoke jurisdiction over this appeal under the unique circumstances doctrine. As a result, Park City's argument fails.

## II. Did the trial court err when it denied Park City's K.S.A. 60-260(b) motion?

Turning our attention to the next issue, we must consider if we have jurisdiction to address whether the trial court erred in denying Park City's K.S.A. 60-260(b) motion. Park City filed a notice of appeal on February 15, 2008, from the trial court's judgment denying its K.S.A. 60-260(b) motion. The notice of appeal concerning that issue was timely filed. See K.S.A. 60-260(b) (allowing a party to file a 60-260[b] motion within "a reasonable time," or within 1 year, depending on the grounds for relief alleged). Because the notice of appeal on the 60-260(b) motion was filed within 30 days of the trial court's entry of judgment (February 1, 2008) on the motion, we have jurisdiction to consider this issue.

As mentioned earlier, the Board's motion for summary judgment centered on one issue: Does K.S.A. 2008 Supp. 12-520a(d)(6) and K.S.A. 12-530 require Park City to give notice to the PCPC that Park City intended to annex the property? The Board argued that the statutes required that, along with the MAPC, the PCPC be notified; Park City argued that the only planning commission that was entitled to receive notice was the MAPC.

Ultimately, the trial court agreed with the Board's argument and concluded that the statutes required Park City to also provide notice to the PCPC. As a result, the court granted summary judgment in favor of the Board, invalidating Park City's annexation of the property.

Apparently, Park City was not aware of the summary judgment motion until after the July 12 hearing. At that point, the attorney representing Park City in the case informed Park City that the trial court had granted summary judgment in favor of the Board. After

retaining new counsel, Park City filed (along with its untimely 60-259[f] motion) a K.S.A. 60-260(b) motion. In the 60-260(b) motion, Park City argued that its previous attorney had failed to adequately raise legal and factual arguments in opposing the Board's summary judgment motion. Though Park City did not come right out and say it, Park City implied in its motion that previous counsel's performance (in his written response and oral argument against the motion for summary judgment) *caused* the trial court to grant the Board's summary judgment motion. The trial court rejected Park City's argument, stating that Park City's previous attorney did an adequate job in opposing the summary judgment motion. Furthermore, the trial court considered the legal and factual arguments that Park City believed its previous attorney should have included in his response and concluded that the new arguments did not change its opinion that K.S.A. 2006 Supp. 12-520a(d)(6) and K.S.A. 12-530 required Park City to give notice to the PCPC before annexing the property at issue.

In its brief, Park City repeats the same arguments it made before the trial court, arguing that its previous counsel's performance in opposing the summary judgment was lacking; therefore, it was entitled to be relieved of the summary judgment order under K.S.A. 60-260(b)(1) based on excusable neglect. Again, Park City does not explicitly state that its previous counsel's performance actually *caused* the trial court to enter summary judgment against it. Park City merely complains that previous counsel should have performed better.

This court reviews a trial court's decision on a K.S.A. 60-260(b) motion for abuse of discretion. *In re Marriage of Laine*, 34 Kan. App. 2d 519, 522, 120 P.3d 802 (2005). Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable. If reasonable persons could differ as to the propriety of the action taken by the district court, then it cannot be said that the district court abused its discretion. *In re Marriage of Bradley*, 282 Kan. 1, 7, 137 P.3d 1030 (2006).

K.S.A. 60-260(b)(1) states: "On motion and upon such terms as are just, the court may relieve a party or said party's legal representative from a final judgment, order, or proceeding for the fol-

lowing reasons: (1) mistake, inadvertence, surprise, or excusable neglect."

As support for its argument that the trial court should have granted its 60-260(b) motion, Park City cites *Montez v. Tonkawa Village Apartments*, 215 Kan. 59, 523 P.2d 351 (1974). In *Montez*, the resident manager for the defendant apartment complex was served with summons and a copy of a personal injury petition. According to his affidavit in support of setting aside the default judgment against the complex, the manager placed the papers on his desk and neither he nor any one else ever saw them again; he simply forgot about them. He failed to tell the complex's owners of the suit, and default judgment was taken. Our Supreme Court set aside the default judgment, holding that this was simple neglect, not inexcusable neglect or "reckless indifference." 215 Kan. at 64-66.

This case is easily distinguishable from the facts in *Montez*. First, and most importantly, the facts here did not involve conduct that directly resulted in an adverse judgment. Park City's previous attorney responded to the Board's summary judgment motion, arguing why the statutes in question did not require Park City to give notice to the PCPC. Furthermore, the previous attorney made an appearance at the hearing on the summary judgment motion and presented arguments against the Board's motion. Despite the previous attorney's efforts, the trial court agreed with the Board's argument and granted its summary judgment motion.

In its 60-260(b) motion for relief, Park City presented the arguments it believed its previous attorney should have raised in opposing the summary judgment motion. The trial court considered these arguments but was not swayed in its belief that the statutes required notice be given to the PCPC. As a result, it cannot be said that Park City's previous attorney was directly responsible for the trial court granting summary judgment against Park City. *Cf. Canaan v. Bartee*, 272 Kan. 720, 723-26, 738-39, 35 P.3d 841 (2001) (setting aside a default judgment that was the direct result of actions taken by defense counsel). Park City is not entitled to relief based on the supposed deficiencies in its previous counsel's legal argument opposing the summary judgment motion.

If anything, Park City, by filing a K.S.A. 60-260(b) motion, wanted to relitigate the merits of the Board's summary judgment motion. Nevertheless, our Supreme Court stated in *Vogeler v. Owen*, 243 Kan. 682, 685, 763 P.2d 600 (1988):

"K.S.A. 60-260(b) was not intended as an alternative method of appellate review nor as a means of circumventing time limits on appeal, except where required by compelling considerations of justice. It does not provide a procedure to challenge a supposed legal error of the court, nor to obtain relief from errors which are readily correctable on appeal. [Citation omitted.]"

Based on our earlier discussion, it cannot be said that the trial court abused its discretion. In short, Park City failed to show that there was excusable neglect to warrant setting aside the summary judgment order. As a result, Park City's argument fails.

Affirmed in part and dismissed in part.